IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STEPHANIE COLLINS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 1:20-cv-296-ECM |
| | ) | (WO) |
| KELVIN MITCHELL ANDREWS and | ) | |
| ALLIED COMPANY OF THE | ) | |
| WIREGRASS, d/b/a ALLIED FENCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stephanie Collins ("Collins") filed this action against defendants Kelvin Andrews and Allied Company of the Wiregrass doing business as Allied Fence Company (collectively the "Defendants") on May 1, 2020. (Doc. 1). Collins alleges claims of race discrimination, hostile work environment and retaliation pursuant to 42 U.S.C. § 1981 as well as state law claims of outrage and invasion of privacy. (*Id*.).

Process was served on Kelvin Mitchell Andrews—individually and as agent of Allied Company of the Wiregrass—on June 29, 2021. (Docs. 15 and 16). Thereafter, no answer was filed, and the Plaintiff filed an application to the Clerk of Court for an Entry of Default. (Doc. 17). The Clerk completed the Entry of Default on August 16, 2021. (Doc. 19). The Entry of Default was mailed to the Defendants. Now pending before the Court is the Plaintiff's motion for entry of default judgment and motion for hearing to determine damages. (Doc. 19). Because evidence can be submitted to the Court on a

motion for default judgment without a hearing, the Court ordered the Plaintiff to submit evidence in support of her motion for default judgment. (Doc. 20).  The Plaintiff timely filed her evidentiary submissions, (docs. 21–22), and the Court finds a hearing to be unnecessary.

For the reasons that follow, the Plaintiff's motion for default judgment and award of damages is due to be GRANTED in part and DENIED in part.

## I.  JURISDICTION

The Court has original subject matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331.  The Court has supplemental jurisdiction of the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

## II.  STANDARD OF REVIEW

Federal Rules of Civil Procedure 55 governs the procedure for obtaining a default judgment.  An entry of default must precede an entry of a default judgment.  *See* Fed. R. Civ. P. 55.  When a defendant "has failed to plead or otherwise defend," and the plaintiff demonstrates that failure, the clerk must enter the defendant's default. FED. R. CIV. P. 55(a). After entry of default, the plaintiff "must apply to the court for a default judgment."  FED. R. CIV. P. 55(b)(2).

"When a defendant defaults, he "admits the plaintiff's well-pleaded allegations of fact." *Giovanno v. Fabec,* 804 F.3d 1361, 1366 (11th Cir. 2015) (quoting *Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1106 (11th Cir. 2015) (quotation marks

omitted)).   The Court may but is not required to hold a hearing before entering a default judgment.   "Given its permissive language, Rule 55(b)(2) does not require a damages hearing in every case." *Giovanno*, 804 F.3d at 1366.   "The district court may forego a hearing where all essential evidence is already of record." *Id*. (internal quotations omitted).

Pursuant to Federal Rule of Civil Procedure 54(c), a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."   If the record is sufficient, a district court may determine damages without a hearing. *See Sec. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).   Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts. *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985).   When assessing damages, a district court must "assure that there is a legitimate basis for  any  damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

### III.  DISCUSSION

### A.  Facts

The Plaintiff, Stephanie Collins ("Collins"), was employed for approximately eight years by Kelvin Andrews ("Andrews") at Allied Company of the Wiregrass, doing business as Allied Fence Company.[1]   She was initiated hired to answer the phones and clean offices.

---

[1]  Although the Plaintiff alleges in the Complaint that Allied Company of the Wiregrass is a domestic limited liability company, the online records of the Alabama Secretary of State indicate that Allied Company of the Wiregrass is an incorporated entity. *See* "Business Entity Details," at https://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=000188852&page=name&file=&type=ALL&status=ALL&

In 2018, Collins began driving Andrews to job sites, entering payroll, and performing other duties which increased her hours to 40 hours per week.

At some point during her employment, Andrews began using the n-word in Collins' presence, telling her that his friends employed a n*****r-lover, referring to her. Collins informed Andrews that she was offended by his language and that she had African American family members. Collins' stepfather and boyfriend are African–American, and her children are biracial.

After Andrews' grandson called Collins a n****r-lover at work, Collins complained to Andrews. Andrews responded, "well you can't help who you are." Collins left work and Andrews told her he would call her about when to return. When Andrews did not call Collins to return to work, she assumed she had been fired. She applied for unemployment, which was denied because Allied Fence responded that she had quit. Thereafter, Andrews' wife, Linda, called Collins and said that Andrews wanted her to return to work, Collins agreed; however, Andrews continued to use the n-word in her presence.

On January 20, 2020, Collins was driving Andrews to a job site when she took a wrong turn, and Andrews called her stupid. When Collins told Andrews not to call her stupid, he responded by saying "I just did, and I meant what I said." He then proceeded to tell Collins that he was "dominant over a damn female;" that she would "never equal a

---

place=ALL&city= (last visited on Sept. 26, 2022). "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). *See also Sims v. CM Food Serv., LLC,* 2016 WL 6778301, *2 (N.D. Ala. 2016). The information gleaned from the Secretary of State's website falls within the purview of Rule 201, and the Court takes judicial notice of the Secretary of State's records.

white human;" that she was not a white human; and that she thinks she's "special because [she] live[s] with n*****s."  Andrews continued in this vein until they returned to the office.

Collins left work and returned three days later.  The next day, Andrews asked Collins to drive him to another job site and Collins refused, telling Andrews that she was not comfortable being in a car with him.  Andrews told Collins she would not have a job if she "wasn't going to do what he said."  Collins left and did not return to Allied Company of the Wiregrass.

Collins filed this lawsuit on May 1, 2020.

### B.  Entry of Default Judgment

The Defendants have failed to file a response or acknowledge the pending lawsuit, bringing a halt to Collins' litigation.  Both the Company and Andrews were properly served.  (Docs. 15 and 16).  The Clerk has completed an Entry of Default.  (Doc. 18).  The Plaintiff has filed a motion for entry of default judgment (doc. 19) which is ripe for review.  Thus, the Court must determine whether default judgment is appropriate.

In the Eleventh Circuit, there is a "strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.,* 328 F.3d 1291, 1295 (11th Cir. 2003). Nonetheless, it is well-settled that a "district court has the authority to enter default judgment for failure . . . to comply with its orders or rules of procedure." *Wahl v. McIver,* 773 F.2d 1169, 1174 (11th Cir. 1985).  Rule 55 of the Federal Rules of Civil Procedure provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ.

P. 55(a).   Where, as here, the Defendants have failed to respond to or otherwise acknowledge the pendency of a lawsuit against them after being served, entry of default judgment may be appropriate.

The law is clear, however, that a defendant's failure to appear and the Clerk's subsequent entry of default do not automatically entitle the Plaintiff to a default judgment. A default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.,* 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004); *see also Descent v. Kolitsidas,* 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("The defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"); *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("A default judgment cannot stand on a complaint that fails to state a claim.").

"The allegations must be well-pleaded in order to provide a sufficient basis for the judgment entered." *De Lotta v. Dezenzo's Italian Rest., Inc.,* 2009 WL 4349806 at *2 (M.D. Fla. 2009) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir. 2009)).   In deciding whether the allegations in the complaint are well pleaded, the "plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)

(quotations omitted) (bracket added).  Instead, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

  *1.  42 U.S.C. § 1981 Race Discrimination and Hostile Work Environment Claims*

  The Plaintiff brings § 1981 race discrimination and hostile work environment claims against the Company as her employer and Andrews individually.  Pursuant to § 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, [and] give evidence . . . as is enjoyed by white citizens." 42 U.S.C. § 1981.[2]  Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Group,* 168 F.3d 468, 472 (11th Cir. 1999).  Thus, section 1981 provides a cause of action for race-based employment discrimination.  In an employment discrimination case, the Plaintiff bears the ultimate burden of proving that the Defendants intentionally discriminated against her. *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

---

[2] Section 1981 provides, in pertinent part:

> (a)  All persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, . . .

> (b)  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981.

Direct evidence of employment discrimination consists of statements by a person with control over the employment decision "sufficient to prove discrimination without inference or presumption." *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993) (citing *Carter v. City of Miami,* 870 F.2d 578, 581-82 (11th Cir. 1989)). Although the Eleventh Circuit has severely limited the type of language constituting direct evidence of discrimination, the language used in this case by Andrews is sufficient to demonstrate direct evidence of discrimination.  *See*, *Burrell v. Board of Trustees of Georgia Military College,* 125 F.3d 1390, 1393 (11th Cir. 1997) ("Direct evidence is evidence, which if believed, proves [the] existence of fact in issue without inference or presumption.") (internal quotation omitted).

A plaintiff presents direct evidence of discrimination where "actions or statements of an employer reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641-42 (11th Cir. 1998); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997).

Unlike in Title VII cases, "individual employees can be held liable for discrimination under § 1981." *Leige v. Capitol Chevrolet, Inc.*, 895 F. Supp. 289, 293 (M.D. Ala. 1995).  "Supervisors with the capacity to hire and fire and those who can

recommend such decisions are subject to liability under § 1981." *Id.* (citing *Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir. 1975)).[3]

Finally, the Supreme Court, in *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, held that § 1981 plaintiffs must prove but–for causation. 140 S.Ct. 1009, 1014 (2020) (holding, "a plaintiff must demonstrate that, but for the defendant's unlawful conduct, [her] alleged injury would not have occurred") (bracket added).   Accordingly, Collins bears the burden of demonstrating that "race was a but-for cause of [her] injury," or that "the defendant would have responded differently but for the plaintiff's race . . . ." *Id.* at 1014–15 (bracket added).

> To establish a hostile work environment claim, a plaintiff must show: (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (brackets added).

Moreover, it has long been recognized in this circuit that "section 1981 prohibits discrimination based upon interracial marriage or association." *See Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir. 1986); *Faraca*, 506 F.2d at 958–59;

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

*Tomczyk v. Jocks & Jills Restaurants, LLC*, 198 F. App'x 804, 808–09 (11th Cir. 2006).[4] Evidence of discrimination sufficient to support a claim under § 1981 may be either direct or circumstantial.

"Only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence." *Clark*, 990 F.2d at 1223. The Plaintiff's allegations concerning her § 1981 race discrimination and hostile work environment claims provide a sufficient basis to hold both the Company and Andrews liable, and for the Court to enter default judgment against the Defendants. The Plaintiff alleges that Andrews routinely used abhorrent and racially offensive language directed at her due to her association with African–Americans during the scope of her employment. (Doc. 1). Andrews, among other things, told the Plaintiff she "will never equal a white human," that she submits to "f***ing n***ers," that she is not "a white human," that she thinks she's special "because [she] live[s] with n***ers," and "just don't be sassing white folks." (*See* Doc. 21-1).

Andrews' own words clearly and directly demonstrate his discriminatory, hostile attitude towards Collins that results from her relationships with African–Americans. In the complaint, Collins details Andrews' repeated use of the "n" word around her despite his knowledge that she has an African–American stepfather, lives with an African–American man and has biracial children. (*Id.*). In addition, she describes in detail Andrews'

_____

[4] While the Court recognizes that *Tomczyk*, 198 F. App'x 804 (11th Cir. 2006), is an unpublished opinion, the Court finds its analysis to be persuasive.

abhorrent remarks about African–Americans in general and Collins in particular for her association with African–Americans. (*Id*.).

As the President and Secretary of Allied Company of the Wiregrass, Andrews clearly had the authority to hire and fire Collins.[5] Andrews perpetuated the discrimination, and the Company knew or should have known of his discriminatory conduct because he is the Company President with hiring and firing authority.

The law is well established that harassment based on the Plaintiff's interracial relationships is forbidden. *See Parr*, 791 F.2d at 890; *Faraca*, 506 F.2d at 957.  The Court concludes that the allegations in the complaint, which are deemed admitted by reason of default, are sufficient to establish that Collins was subjected to a discriminatorily hostile work environment due to her relationship with African-Americans, and the allegations are sufficient to hold both the Company and Andrews liable for the hostile work environment.

### 2.  42 U.S.C. § 1981 Retaliation - Constructive Discharge Claim

Section 1981 also provides a vehicle for retaliation claims. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008).  "To make a *prima facie* case for a claim of retaliation ..., a plaintiff must first show (1) that she engaged in statutorily protected activity, (2) that she suffered an adverse action, and (3) that the adverse action was causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (quotations omitted).  Constructive discharge claims are appropriate when "an employer discriminates against an employee to the point such that [her] working

---

[5] *See fn.1, supra.*

conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Hicks v. City of Tuscaloosa, Ala.*, 870 F.3d 1253, 1258 (11th Cir. 2017) (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016) (bracket added)). The Plaintiff's protected activity must be "a but-for cause of the alleged adverse action by the employer." *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). "Stated another way, a plaintiff must prove that had she not complained, she would not have been fired." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018).

The Plaintiff alleges that she engaged in protected activity, she was subjected to a hostile work environment as a result of her protected activity, and as a result, her "working conditions were so intolerable that any reasonable person in her position would be forced to resign."[6]  (Doc. 1 at 7, para. 33–35).  Specifically, Collins alleged that she complained on multiple occasions to Andrews of discrimination and that he was creating a hostile work environment by his repeated offensive language directed at her.  Collins further alleges that Andrews continued the harassing behavior after she complained, leaving her no choice but to resign resulting in her constructive discharge.  (Doc. 1 at 7).  "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job." *Davis v. Legal Servs. Alabama, Inc.*, 19 F.4th 1261, 1268 (11th Cir. 2021) (alteration added).  Upon consideration of the Plaintiff's

---

[6] Although the Plaintiff alleged in her complaint that the protected activity she engaged in was her association with African–Americans, in her submissions, she adequately alleges that she repeatedly complained to Andrews about his continued harassment by his use of racially offensive language.  She alleges that Andrews persisted in his harassing behavior, and thus, she was forced to quit when Andrews failed to cease his discriminatory conduct.

allegations, which are deemed admitted by the Defendants, the Court finds that Collins has sufficiently alleged that she was retaliated against by Andrews and constructively discharged from the Company. The Plaintiff's motion for entry of default judgment on these claims will be granted.

### 3.   Outrage Claim

The Plaintiff also brings a claim of outrage based on Defendant Andrews' diatribe in January 2020. The Alabama Supreme Court first recognized the tort of outrage, or intentional infliction of emotional distress, in *American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala. 1981). To establish a claim of the tort of outrage, Collins must show that

> (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) the distress was severe. *Harris v. McDavid,* 553 So.2d 567 (Ala.1989). The conduct alleged must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 570; *citing American Road Service Co. v. Inmon,* 394 So.2d 361, 365 (Ala.1980).

*Shepherd v. Summit Mgmt. Co.*, 726 So. 2d 686, 694 (Ala. Civ. App. 1998).

The Alabama Supreme Court has declined to impose liability against an employer except in the most egregious cases. *BSE Indus. Contr. Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993).

> Under Alabama law, the tort of outrage is an extremely limited cause of action that applies to three kinds of conduct: (1) wrongful conduct regarding burial matters; (2) barbaric methods used to coerce an insurance settlement; and (3) egregious sexual harassment.

*Stancombe v. New Process Steel LP*, 652 F. App'x 729, 739 (11th Cir. 2016).  In those cases in which egregious sexual harassment has been found to constitute the tort of outrage, some sort of physical touching occurred in conjunction with sexually charged language. *See Gray v. Koch Foods, Inc.*, 580 F. Supp. 3d 1087, 1129–30 (M.D. Ala. 2022) (allegations of sexual assault, "followed by an indecent exposure and exhibitionist sex act" sufficient for outrage claim to proceed); *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 324 (Ala. 1989) (finding outrage where the defendant made sexually charged and offensive comments and "put his arm around the plaintiffs, grabbed their arms, and stroked their necks");  *Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1344–45 (M.D. Ala. 2009) (finding outrage where defendant made sexually explicit and offensive comments and "rubbed [the plaintiff's] leg"; blocked her path in the corridors of the plant; grabbed and shook his genitals at her; intentionally bumped up against her; "hugged her"; and repeatedly sexually propositioned her); *Mills v. Wex-Tex Indus., Inc.*, 991 F. Supp. 1370, 1386 (M.D. Ala. 1997) (finding a claim for outrage where the defendant repeatedly touched the plaintiff in a sexual way); *Brewer*, 946 F. Supp. at 936 (finding outrage where a supervisor touched the plaintiff's buttocks and breasts, pressed against her, and made sexual propositions).

While Andrews' conduct was reprehensible and egregious, the Plaintiff has failed to allege sufficient facts to be entitled to default judgment on her claim of outrage.  The Plaintiff's allegations revolve around Andrews' racially abhorrent language that was repeatedly directed at her.  The Plaintiff does not allege that she was in any way assaulted or otherwise physically accosted by Andrews.  While Collins alleges that Andrews'

14

conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency," she fails to allege any facts that place her race discrimination or hostile work environment claim in the realm of the extremely limited conduct that constitutes the tort of outrage.  While the Court finds Andrews' conduct offensive and appalling, as pled, the Plaintiff's allegations are insufficient under Alabama law to entitle the Plaintiff to default judgment on her claim of outrage.

### 4.    Invasion of Privacy Claim

Alabama "recognizes that the wrongful intrusion into one's private activities constitutes a tort known as the invasion of privacy." *Alabama Electric Co–Operative, Inc. v. Partridge,* 284 Ala. 442, 445, 225 So.2d 848, 851 (1969).  The Alabama Supreme Court

> set out the "four distinct wrongs" of the tort of invasion of privacy:  1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use. *See Hogin v. Cottingham,* 533 So.2d 525, 528 (Ala.1988).

*Johnson v. Corp. Special Servs., Inc.*, 602 So. 2d 385, 387 (Ala. 1992) (internal quotations omitted).

In her complaint, the Plaintiff alleges the following in support of her claim on invasion of privacy.

> In January 2020, Defendant committed a tortious invasion of privacy by wrongfully intruding into Plaintiff's private activities and affairs in an indecent and offensive manner and for an immoral and unlawful purpose so as to outrage or cause mental suffering, shame or humiliation to a person or ordinary sensibilities and thereby invaded Plaintiff's privacy.

(Doc. 1 at 9, para. 44).

Beyond these conclusory allegations, the Plaintiff fails to allege sufficient facts to support a claim of invasion of privacy under Alabama law.  The Court declines to enter default judgment on this claim.

**C. Damages**

After careful consideration of the pleadings, the briefs and evidence submitted, the Court concludes that a hearing is not necessary to award the Plaintiff damages.  In her affidavit submitted in support of her motion for default judgment, Collins asserts that Andrews' comments occurred during her eight-year tenure at Allied Fence Company and culminated in his tirade in January 2020.  (*Id.*)  Collins also presents a handwritten letter from Andrews to Collins' attorney in which he does not dispute the recording referenced in the complaint and provided to the Court in evidence.  (Doc. 21-2 at Ex. A).  The letter, in its entirety, reads as follows:

> All statemen she recorder is the truth.  I stand behind them  If she had not talk back to me this fuss would not happen.  She would not do as I ask.  Then given me order she made me mad and I tool her off.  And this was in private until she made it public. All she wants is a free ride.

(*Id.*) (errors in original).

*1. Back Pay*

Collins first requests back pay from the date of her termination, January 24, 2020, to entry of judgment.  She presented evidence that her annual salary at Allied Fence was $22,180.64.  "The purpose of relief under the federal employment anti-discrimination laws is to make persons whole for injuries suffered on account of unlawful employment

discrimination." *U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1251 (11th Cir. 1997) (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–19 (1975) (a Title VII case) (internal quotations omitted)); *Virgo v. Riviera Beach Assocs., Ltd*, 30 F.3d 1350, 1363 (11th Cir. 1994).  Thus, the Court concludes that Collins is entitled to an award of back pay.

However, the Plaintiff is also required to mitigate her damages.  While mitigation is required by statute in Title VII cases, mitigation of damages under § 1981 is consistent with the statutory duty established in other employment discrimination cases.  *See Deffenbaugh-Williams v. Wal-Mart Stores, Inc.,* 156 F.3d 581, 591 (5th Cir. 1998) *reinstated on reh'g* 182 F.3d 333 (5th Cir. 1999) (en banc) ("Because an award of back pay is an equitable remedy designed to make the injured party whole, ... an injured party has a duty under both § 1981 and Title VII to use reasonable diligence to attain substantially similar employment and, thereby, mitigate damages."); *see also generally Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (11th Cir. 1982) (plaintiff has a "statutory duty to minimize damages" in a Title VII case); *Murphy v. City of Flagler Beach*, 846 F.2d 1306, 1309–10 (11th Cir. 1988) (federal rule of mitigation applies in § 1983 cases).

Thus, the Court concludes that Collins is required to mitigate her damages.  The evidence before the Court demonstrates that Collins was unemployed between February 2020 and August 2020 when she secured employment with the United States Postal Service.  Although Collins suggests that there should be no offset because she has to travel further and works more hours, she provides the Court with no authority for that proposition.  Thus, the Court finds that Collins is entitled to back pay from the date of her constructive

discharge in January 2020 until she secured employment with the United States Postal Service in August 2020. The Court concludes that Collins is entitled to back pay in the amount of $14,787.09 which equates to eight (8) months of back pay plus prejudgment interest.

### 2. Front Pay

Collins also seeks damages in the amount of two years of front pay. While reinstatement is a preferred remedy in a constructive discharge case, in extenuating circumstances, "a trial court may award a plaintiff front pay in lieu of reinstatement." *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000). In determining whether to award front pay, "courts look to whether discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy." *Id*. (internal citations and quotation marks omitted). In this case, the Court finds that reinstatement is not a viable remedy for Collins.

However, the burden of proof is on Collins to prove her damages. This she fails to do. Collins presented no evidence of the difference in her current salary and her salary at Allied Fence. She provides no evidence of her lost benefits. Accordingly, the Court concludes that an award of front pay is not supported on this record.

### 3. Mental Anguish and Pain and Suffering

Collins seeks damages for mental anguish and pain and suffering. Compensatory damages are available under § 1981 to compensate Collins for the emotional distress that resulted from Andrews' discriminatory conduct. *See Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985). However, "[u]nder *Carey v. Piphus*, 435 U.S. 247, 263–64, 98 S.Ct.

1042, 1052–53, 55 L.Ed.2d 252 (1978), compensable damage may not be presumed but must be proven." *Id*. In support of her claim for compensatory damages, Collins asserts that she is "still very hurt and [she] still can't sleep." (Doc. 21-1 at 3). She further sought treatment for anxiety and depression. (*Id*.). Accordingly, the Court concludes that Collins is entitled to an award of compensatory damages in the amount of $50,000 plus prejudgment interest.

### 4. *Punitive Damages*

Collins also requests punitive damages in the amount of ten times compensatory damages to punish Andrews for his reprehensible behavior. While due process prohibits "the imposition of a grossly excessive or arbitrary" award, punitive damages are permitted in a § 1981 discrimination case. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1282 (11th Cir. 2008); *see also Stallworth*, 777 F.2d at 1435 ("Punitive damages are of course available under 42 U.S.C. § 1981 . . . where the defendant's conduct is shown to be motivated by evil motive of intent, or when it involves reckless or callous indifference to the federally protected rights of others.")(internal quotation marks omitted)).

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). *See also Williams v. First Advantage LNS Screening Solutions, Inc*., 947 F.3d 735, 749 (11th Cir. 2020).

> In considering the reprehensibility of the defendant's conduct—"[t]he most important indicium of the reasonableness of a punitive damages award"—the Court articulated the following five factors as relevant: (1) whether the harm caused was physical, rather than economic; (2)

> whether the defendant's conduct "evinced an indifference to or a reckless disregard of the health or safety of others"; (3) whether the target of the conduct was financially vulnerable; (4) whether "the conduct involved repeated actions or was an isolated incident"; and (5) whether the harm resulted from "intentional malice, trickery, or deceit, or mere accident." *Id.* at 419, 123 S.Ct. 1513 (quotation marks omitted).

*Williams*, 947 F.3d at 749.

The Court has little difficulty determining that the factors weigh in favor of an award of punitive damages. While Andrews' conduct was not physical but economic in nature, his conduct "evinced an indifference to" and "a reckless disregard" for Collins. Collins, as Andrews' employee, was financially vulnerable and dependent on her employment. Andrews' conduct was not an isolated instance but conduct that continued for years, culminating in the January 2020 incident. Finally, it is clear that Andrews' conduct was intentional and designated to denigrate, diminish, and offend Collins.

Punitive damages "are aimed at deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003); *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 19 (1991) ("punitive damages are imposed for purposes of retribution and deterrence."). In this case, based on the need to punish and deter Andrews, the Court concludes that an award of punitive damages is warranted. In determining the amount of punitive damages to award, the Court is cognizant that the Supreme Court has stated that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

Andrews' actions are reprehensible, and he has expressed no remorse. The Court concludes that an award of punitive damages in the amount of $150,000, which is three times the amount of compensatory damages, is an appropriate award in this case.

### D. Attorney's fees award

Collins also requests an award of attorney's fees on her federal claims. "In the United States, parties are ordinarily required to bear their own attorney's fees— the prevailing party is not entitled to collect from the loser. . . . Congress, however, has authorized the award for attorney's fees to the 'prevailing party' in numerous statutes" including § 1988(b).[7] *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001). "In order to be eligible for attorney's fees under § 1988, a litigant must be a 'prevailing party.'" *Hewitt v. Helms*, 482 U.S. 755, 759 (1987). The Plaintiff may be a prevailing party for § 1988 attorney's fees purposes if she "succeed[s] on any significant issue in litigation which achieves some of the benefit [she] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)(citation omitted) (alterations added).

Because the Plaintiff has prevailed on her race discrimination, hostile work environment and retaliation claims, she is a prevailing party and entitled to an award of

---

[7] 42 U.S.C. § 1988(b) provides as follows:

> In any action or proceeding to enforce a provision of section[ ] ... 1981 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, . .."

*Id.*

attorney's fees. *See Goldsmith*, 513 F.3d at 1292.  However, the Plaintiff has failed to provide any competent evidence to support her claim for $30,000 in attorney's fees.[8] Accordingly, the Court will deny the Plaintiff's request for attorney's fees without prejudice with leave to refile.

## IV. CONCLUSION

For the reasons as stated and upon consideration of the record as a whole, it is

ORDERED as follows:

1.      The motion for default judgment (doc. 19) is GRANTED as to the Plaintiff's § 1981 claims and judgment will be entered in favor of the Plaintiff and against the Defendants on these claims.

2.      The Plaintiff is awarded back pay in the amount of $14,787.09 plus prejudgment interest for the default judgment on her § 1981 claims.

3.      The Plaintiff is awarded compensatory damages in the amount of $50,000 plus prejudgment interest for the default judgment on her § 1981 claims.

4.      The Plaintiff is awarded punitive damages in the amount of $150,000 plus prejudgment interest for the default judgment on her § 1981 claims.

5.      The Plaintiff's request for front pay is DENIED.

6.      The motion for default judgment is DENIED with respect to the Outrage and Invasion of Privacy claims.

---

[8] In her motion, Collins' attorney asserts that attorney's fees to date are approximately $30,000. (Doc. 21 at 22).

7.      The Plaintiff's request for attorney's fees is DENIED without prejudice with leave to refile.

8.      The Plaintiff's motion for a hearing on damages (doc. 19) is DENIED as moot.

The Clerk of Court is DIRECTED to mail to this Memorandum Opinion and Order and the Final Judgment to the address reflected on docket for the Defendants.

A final judgment will be entered in accordance with the Court's Order.

DONE this 28th day of September, 2022.


/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE